IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

GEORGE WHITE,

                Plaintiff,

          v.                        Civil Action No.
                                         9:05-CV-00193 (LEK/DEP)

SYED HAIDER-SHAH, M.D.,

                Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

GEORGE WHITE, *Pro Se*

FOR DEFENDANTS:

HON. ANDREW M. CUOMO        RISA L. VIGLUCCI, ESQ.
Office of the Attorney General     Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

_____REPORT AND RECOMMENDATION

    Plaintiff George White, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983 alleging deprivation of his constitutional

rights.  In his complaint, as amended, the plaintiff, who has been

diagnosed as being Human Immunodeficiency Virus ("HIV") positive and

suffers from other significant diagnosed health conditions, alleges that

defendant Dr. Syed Haider-Shah, a prison doctor working at the facility in

which he was incarcerated during the period in question, was deliberately

indifferent to his serious medical needs, in violation of the Eighth

Amendment to the United States Constitution.  At the heart of plaintiff's

claims is the contention that Dr. Haider-Shah denied his request to see an

HIV specialist on one isolated occasion, falsified his medical records,

acted toward him in a hostile and belligerent manner, and misdiagnosed a

stroke as a seizure.  As relief, plaintiff seeks a total recovery of $2 million

in compensatory and punitive damages.

Currently pending before the court is a motion filed by the defendant

seeking the entry of summary judgment dismissing plaintiff's complaint.  In

his motion, defendant asserts that as a matter of law he was not

subjectively indifferent to the plaintiff's medical needs.  Based upon a

thorough review of the record now before the court, I conclude that no

reasonable factfinder could discern any indifference on Dr. Haider-Shah's

part to plaintiff's medical needs, and therefore recommend that

defendant's motion for summary judgment be granted.

I.   <u>BACKGROUND</u>

With relatively few exceptions, the facts underlying plaintiff's claims are not controversial.[1]  At the times relevant to his claims, plaintiff was a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS"), and housed within the Marcy Correctional Facility ("Marcy").  *See generally* Amended Complaint (Dkt No. 39).  Before entering DOCS custody in or about 2002, plaintiff's medical care was administered by the New York City Office of Correctional Health Services.  Records from that office, including an intake history dated April 12, 2002, reflect that plaintiff has been diagnosed with being HIV positive, and as suffering from hypertension, epilepsy, tobacco and cocaine use, hepatitis C, and with a history of

---

[1]  The following recitation is derived from the record now before the court, which includes plaintiff's amended complaint, with all inferences drawn and ambiguities resolved in plaintiff's favor. *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005); *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). To the extent there is any significant controversy over facts material to the issues raised in defendant's motion, they will be noted.

syphilis.[2, 3]  Plaintiff's Medical Records at 6; Haider-Shah Decl. (Dkt. No. 53-5) ¶ 5.  Those records also show that plaintiff suffered from frequent seizures over the preceding eight years, and was taking Dilantin, an anti-seizure medication.  Plaintiff's Medical Records at 1; Haider-Shah Decl. (Dkt. No. 53-6) ¶ 5.

Plaintiff's health records include reference to treatment received by him on May 1, 2002 at the Bellevue Hospital Center.  Plaintiff's Medical Records at 7; Haider-Shah Decl. (Dkt. No. 53-6) ¶ 6.  While there, plaintiff was diagnosed with toxoplasmosis, a parasitic disease that can cause damage to the brain, eyes, and other organs, and to which persons with weakened immune systems are most susceptible.  Haider-Shah Decl. (Dkt. No. 53-6) ¶ 6.

Upon his transfer into DOCS custody in or about June of 2002, the plaintiff was administered a comprehensive medical examination.

---

[2]    During his deposition plaintiff admitted having had a previous seizure in or about 2000, but did not remember ever having been diagnosed as suffering from epilepsy.  White Deposition (Dkt No. 53-4) 10:17-22.

[3]    Plaintiff's medical records have been filed with the court traditionally, pursuant to permission granted on September 27, 2007, though without any exhibit number or other identifying designation, and will therefore be cited herein simply as "Plaintiff's Medical Records at ___."  *See* Dkt. No. 52.  The court appreciates that those medical records have been well-organized and paginated by the defendants' counsel for ease of reference.

Plaintiff's Medical Records at 59-65; Haider-Shah Decl. (Dkt. No. 53-6) ¶

7.  According to a record of that examination, the plaintiff reported having

experienced a cerebrovascular accident ("CVA"), or stroke, in or about

1997, as well as four subsequent CVAs.  Plaintiff's Medical Records at 59;

Haider-Shah Decl. (Dkt. No. 53-6) ¶ 7.  The plaintiff also recounted a

history of suffering from a seizure disorder, as well as toxoplasmosis with

central nervous system involvement, and additionally reported suffering

from poor memory and confusion.  *Id*.

Plaintiff's medical records, which are extensive, reveal that once

received at Marcy he was seen by prison medical staff, including Dr.

Krishna Vadlamudy and the defendant – two doctors employed at the

facility – with substantial frequency, and additionally was referred to

various outside specialists at regular intervals.  *See generally* Plaintiff's

Medical Records.  On April 1, 2003, on orders of Dr. Donald Blair, an

infectious disease specialist, magnetic resonance imaging ("MRI") testing

of plaintiff's brain was conducted in light of reported weaknesses of

plaintiff's left upper and lower extremities as well as in his face.[4]  Plaintiff's

---

[4]      In a report of that MRI testing Dr. John Wasenko opined that the findings
of the brain scan were consistent with the recorded prior diagnosis of toxoplasmosis.
Plaintiff's Medical Records at 158.

Medical Records at 152, 158.  Following that testing, plaintiff was seen by Dr. Blair on a regular basis, including on April 10, 2003, July 3, 2003, August 7, 2003, October 9, 2003, January 8, 2004, April 1, 2004, September 2, 2004, January 3, 2005, and April 4, 2005.[5]  *Id.* at 152, 203, 207, 220, 261, 350, 371, 395, 496, 508.  Plaintiff was also referred to an outside neurologist on multiple occasions, including September 17, 2004, October 19, 2004, and March 25, 2004.[6]  *Id.* at 401, 415, 500.  In addition, plaintiff was seen during the relevant period on many occasions by Dr. Vadlamudy and Dr. Haider-Shah, as well as other medical personnel at Marcy, and his HIV viral load was monitored at regular intervals.  *See generally* Plaintiff's Medical Records.

Plaintiff's deliberate indifference claim focuses in large part upon events which occurred in and about June of 2004.  Amended Complaint

_____

[5]    Some of those examinations were completed through use of a "telemed system" by which video cameras are used to allow an off-site physician to examine a DOCS inmate.  Haider-Shah Decl. (Dkt. No. 53-6) ¶ 14.

[6]    Plaintiff denies having been seen by a specialist in April of 2004.  *See* Amended Complaint (Dkt. No. 39) ¶ II(D).  This discrepancy is not material to plaintiff's medical indifference claim, and thus need not be resolved prior to adjudication of that cause of action. *See* Fed. R. Civ .P. 56(c) (indicating that summary judgment should be rendered if "there is no genuine issue as to any material fact"); *see also Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a material fact is one that "might affect the outcome of the suit under the governing law" and that "[f]actual disputes that are irrelevant or unnecessary" cannot defeat a motion for summary judgment).

(Dkt. No. 39) ¶ II(D).  White asserts that on June 10, 2004 he went to the

Marcy facility hospital to be examined, and while there was given incorrect

information regarding his health status by Dr. Haider-Shah.  *Id.*  Plaintiff's

health records confirm that he did appear at the Marcy facility hospital on

June 10, 2004 for examination, complaining of having suffered from

worsening right facial weakness, beginning two weeks earlier.  Dr. Haider-

Shah examined the plaintiff and noted the facial weakness but no other

neurological signs; a follow-up appointment was ordered by Dr. Haider-

Shah, to occur no later than July 12, 2004.  Haider-Shah Decl. (Dkt. No.

53-6) ¶ 15.

On June 15, 2004, White reported to sick-call complaining of chest

congestion; on that occasion the plaintiff was seen by a nurse, who

prescribed Sudafed.  Haider-Shah Decl. (Dkt. No. 53-6) ¶ 16.  White

returned to sick-call later that same day to request to have his Dilantin

levels checked.  *Id.* ¶ 17.

The plaintiff maintains that on June 16, 2004, he went to sick-call and

was seen by Dr. Haider-Shah, at that time asking to see his HIV specialist,

Dr. Blair, but was told that he would have to wait until September for the

referral.[7]  Amended Complaint (Dkt. No. 39) ¶ II(D).  The plaintiff further alleges that at this meeting Dr. Haider-Shah became "hostile" with him and ended the appointment without addressing the plaintiff's "health status."  Amended Complaint (Dkt. No. 39) at p. 3A.

Dr. Haider-Shah saw the plaintiff on July 6, 2004, for the prescribed follow-up appointment to the June 10, 2004 examination.  Plaintiff's Medical Records at 383; Haider-Shah Decl. (Dkt. No. 53-6) ¶ 19.  At that time, plaintiff complained of double vision, in response to which Dr. Haider-Shah authored a referral request for the plaintiff to have a CT scan performed.  *Id.*  After reviewing the results of the ensuing CT testing, on July 9, 2004 Dr. Wasenko concluded that the scan was consistent with the plaintiff's existing toxoplasmosis condition.  Plaintiff's Medical Records at 384; Haider-Shah Decl. (Dkt. No. 53-6) ¶ 20.

Another prong of plaintiff's amended complaint focuses upon an alleged failure of Dr. Haider-Shah to diagnose a stroke, which according to White was considered instead by the defendant to have been the result of a seizure, causing paralysis and partial loss of sight and speech.

---

[7]      There is no reference in plaintiff's ambulatory health record to a sick-call request on June 16, 2004.  *See generally* Plaintiff's Medical Records; Haider-Shah Decl. (Dkt. No. 53-5) ¶ 18.

Amended Complaint (Dkt. No. 39) ¶ III.  Plaintiff's medical records reflect,

however, that his facial paralysis is the result of either a CVA suffered

before entering the DOCS, or from his diagnosed toxoplasmosis with

central nervous system involvement, or a combination of those two

conditions both of which have been confirmed through the results of CT

and MRI testing.[8]  Haider-Shah Decl. (Dkt. No. 53-6) ¶ 38.  There is no

indication from the record as to what different course would have been

followed had Dr. Haider-Shah concluded that plaintiff had suffered from a

recent stroke.

II.   PROCEDURAL HISTORY

        Plaintiff commenced this action on February 11, 2005 and, following

routine review of his complaint and the granting of *in forma pauperis*

status, later filed an amended complaint more clearly detailing his claims.[9]

Dkt. Nos. 1, 39.  Named as the sole defendant in plaintiff's amended

---

        [8]        For the first time reported while in DOCS custody, on September 17,
2004, the plaintiff denied ever having had a stroke during the course of a neurological
consultation.  As was previously noted, by contrast, according to his comprehensive
medical examination performed upon his entry into the DOCS system in 2002, White
admitted suffering a CVA in or about 1997 and reported suffering four CVAs since
then. Plaintiff's Medical Records at 59-65; Haider-Shah Decl. (Dkt. No. 53-5) ¶ 7.

        [9]        Plaintiff's amended complaint was approved by the court for filing on
January 10, 2007, Dkt. No. 38, and remains the operative pleading defining his claims
 in the action.

complaint is Dr. Haider-Shah.[10]

On September 28, 2007, defendant moved seeking the entry of summary judgment dismissing plaintiff's complaint.  Dkt. No. 53.  In his motion, the defendant argues plaintiff's claims are unsupported, and that as a matter of law the record fails to disclose any deliberate indifference on his part to the plaintiff's medical needs.  Defendant's motion, which plaintiff has opposed, *see* Dkt. No. 58, is now ripe for determination and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

   A.   Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

_____

[10]      Plaintiff's initial complaint also named New York State Facility Health Services as a defendant.  *See* Dkt. No. 1.  That entity was dismissed from the case by order issued by the court on March 10, 2005.  Dkt. No. 3.

Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct.
2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247,
106 S. Ct. 2505, 2509-10 (1986); *Security Insurance Co. of Hartford v. Old
Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is
"material", for purposes of this inquiry, if "it might affect the outcome of the
suit under governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510;
*see also Jeffreys*, 426 F.3d at 553 (citing *Anderson*).  A material fact is
genuinely in dispute "if the evidence is such that a reasonable jury could
return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106
S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to special latitude
when defending against summary judgment motions, they must establish
more than merely "metaphysical doubt as to the material facts."
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106
S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d
615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether
*pro se* plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial
burden of demonstrating that there is no genuine dispute of material fact
to be decided with respect to any essential element of the claim in issue;

11

the failure to meet this burden warrants denial of the motion.  *Anderson*,

477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Insurance*, 391 F.3d

at 83.  In the event this initial burden is met, the opposing party must

show, through affidavits or otherwise, that there is a material issue of fact

for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at

2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

    When deciding a summary judgment motion, a court must resolve any

ambiguities, and draw all inferences from the facts, in a light most

favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright*, 132

F.3d at 137-38.  Summary judgment is inappropriate where "review of the

record reveals sufficient evidence for a rational trier of fact to find in the

[non-movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d

Cir. 2002) (citation omitted); *see also Anderson*, 477 U.S. at 250, 106 S.

Ct. at 2511 (summary judgment is appropriate only when "there can be but

one reasonable conclusion as to the verdict.").

    B.    Deliberate Indifference

____In his motion, Dr. Haider-Shah challenges the merits of the plaintiff's

deliberate indifference claim.  Accepting, for purposes of his motion, that

plaintiff can establish the existence of a serious medical need, the

12

defendant nonetheless argues that his conduct does not support plaintiff's claim of his deliberate indifference to that serious medical need.

The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are "incompatible with the evolving standards of decency that mark the progress of a maturing society."[11] *Estelle v. Gamble*, 429 U.S. 97, 102-03, 97 S. Ct. 285, 290 (1976) (citations and internal quotations omitted); *see also Whitley v. Albers*, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084 (1986) (citing, *inter alia*, *Estelle*).

The Eighth Amendment "'does not mandate comfortable prisons'", but does not tolerate inhumane ones either; thus the conditions of an inmate's confinement, including medical care, are subject to Eighth Amendment scrutiny. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)). To succeed on a claim alleging that prison conditions, including but not limited to medical care, violate the Eighth Amendment, a plaintiff must satisfy both an objective and a subjective requirement – the

---

[11]     That amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

conditions must be "sufficiently serious" from an objective point of view, and the plaintiff must demonstrate that prison officials acted subjectively with "deliberate indifference".  *Farmer*, 511 U.S. at 834, 114 S. Ct. at 1977 (citations and internal quotations omitted); *see also Leach v. Dufrain*, 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, D.J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)); *Waldo v. Goord*, No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, D.J. and Homer, M.J.) (also citing, *inter alia*, *Wilson*).

        In order to state a medical indifference claim under the Eighth Amendment, a plaintiff must allege a deprivation involving a medical need which is, in objective terms, "sufficiently serious".  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citing *Wilson*, 501 U.S. at 298, 111 S. Ct. at 2324), *cert. denied sub nom.*, *Foote v. Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108 (1995).  A medical need is serious for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain'."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citations omitted).  A serious medical need can also exist where "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain'" – since medical conditions vary

14

in severity, a decision to leave a condition untreated may or may not be unconstitutional, depending on the facts*. Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*).  Relevant factors informing this determination include whether the plaintiff suffers from an injury that a "'reasonable doctor or patient would find important and worthy of comment or treatment'", a condition that "'significantly affects'" a prisoner's daily activities, or "'chronic and substantial pain.'"  *Chance*, 43 F.3d at 701 (citation omitted).

Turning to the subjective element, it is well-established that deliberate indifference, in a constitutional sense, exists if an official knows of and disregards an excessive risk to inmate health or safety; the official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp.2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

Central to plaintiff's medical indifference claim are his contentions that 1) he was entitled to referral to an HIV specialist in June of 2004 – a measure which was deferred until September of that year, and 2) the defendant misdiagnosed a stroke as a seizure.  The second of those

15

claims can be swiftly discounted on two fronts.  Aside from plaintiff's statement of allegedly having been told by a physician at the Fishkill Correctional Facility that he had experienced a stroke rather than a seizure, *see* Amended Complaint (Dkt. No. 39) at p. 3A – a statement which constitutes rank hearsay and is not admissible as evidence in connection with the pending summary judgment motion, *see Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999) (indicating that inadmissible hearsay evidence fails to create a genuine issue for trial); *Dukes v. City of New York*, 879 F. Supp. 335, 343 (S.D.N.Y. 1995) ("[U]nsworn statements are not admissible to controvert a summary judgment motion.") – the record contains no evidence to support plaintiff's claim of misdiagnosis.  In any event, plaintiff's misdiagnosis claim at best presents an issue of negligence or medical malpractice under state tort law and, standing alone, does not rise to a level of constitutional significance.  *Hudson v. Clark,* 319 F. Supp. 2d 347, 352-52 (W.D.N.Y. 2004); *see also Daniels v. Williams,* 474 U.S. 327, 330-31, 106 S. Ct. 662, 664-65 (1986) (stating that mere negligence on the part of state officials is not actionable under section 1983 and does not work a constitutional deprivation by itself).

Plaintiff's claim that on one occasion his request to see an HIV specialist was denied is similarly insufficient to establish a constitutional deprivation.  It is well-established that mere disagreement with a prescribed course of treatment, or even a claim that negligence or medical malpractice has occurred, does not provide a basis to find a violation of the Eighth Amendment.  *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 201-02; *Chance*, 143 F.3d at 703; *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.), *cert. denied*, 506 U.S. 1040, 113 S. Ct. 828 (1992).  Diagnostic techniques and treatments are a "classic example of a matter for medical judgment", and medical staff is vested with broad discretion to determine what method of diagnosis and/or treatment to provide its patients.  *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703; *Rosales v. Coughlin*, 10 F. Supp.2d 261, 264 (W.D.N.Y. 1998).  As long as the medical care provided was adequate, there is no Eighth Amendment violation.  *Wandell v. Koenigsmann*, No. Civ.A. 99-8652, 2000 WL 1036030, at *3 (S.D.N.Y. July 27, 2000).

Plaintiff's claim surrounding the specialist referral appears predicated principally upon a three month delay in providing him with the desired level of specialized medical care.  It is true that a delay in providing an inmate

17

with treatment of a serious medical condition can give rise to a finding of an Eighth Amendment violation in circumstances where the condition ignored is "life-threatening and fast-degenerating", or where treatment is withheld over a lengthy period of time while the plaintiff complains of extreme pain.  *Sully-Martinez v. Glover*, No. 00 CIV. 5997, 2001 WL 1491278, at *5 (S.D.N.Y. Nov. 26, 2001) (citing *Hathaway v. Coughlin*, 841 F.2d 48 (2d Cir. 1988) and *Archer v. Dutcher*, 733 F.2d 14 (2d Cir. 1984)).  This, however, is not such a case.  Nowhere in the record is there evidence for which a reasonable fact finder could conclude that between June and September of 2004, during a period when he was regularly examined by local medical personnel at Marcy, he suffered extreme pain or experienced a life-threatening and fast-degenerating condition which could have been avoided had his demand been honored.

The record in this case reflects a remarkably comprehensive series of intensive efforts to address plaintiff's many – and undeniably potentially serious – medical conditions.  Plaintiff's quarrel with defendant's treatment of his conditions, and in particular his failure to make the desired specialist referral in June of 2004 represents nothing more than his disagreement with a medical judgment, and the record lacks any basis to conclude that it

rises to a level of controverted significance.  Medical professionals are accorded considerable discretion in treating prisoners under their care; section 1983 was not designed to permit the federal courts to sit as final arbiters of the sufficiency of medical practices of state prisons.  *Church v. Hegstrom*, 416 F.2d 449, 450-51 (2d Cir. 1969). Determinations made by medical providers within their discretion are given a "presumption of correctness" when it concerns the care and safety of patients.  *Perez v. The County of Westchester*, 83 F. Supp. 2d 435, 440 (S.D.N.Y. 2000) (citing *Kulak v. City of New York*, 88 F.3d 63, 77 (2d Cir. 1996)).

Accordingly, and particularly in light of the comprehensive treatment provided by Dr. Haider-Shah and others at the Marcy facility hospital and elsewhere to the plaintiff during the period of his incarceration, I conclude that no reasonable factfinder could determine that the defendant subjectively demonstrated deliberate indifference to White's serious medical conditions.  Plaintiff's Eighth Amendment deliberate indifference claim therefore lacks merit, as a matter of law.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

A thorough review of the comprehensive record now before the court fails to disclose evidence from which a reasonable factfinder could

19

conclude that the defendant, a professional medical doctor employed at Marcy, was deliberately indifferent to any of the serious medical needs alleged by the plaintiff.  Accordingly, defendant is entitled to the entry of summary judgment dismissing plaintiff's complaint in its entirety.  It is therefore hereby

RECOMMENDED, that defendant's motion for summary judgment (Dkt. No. 53) be GRANTED, and that plaintiff's complaint be DISMISSED in its entirety.

NOTICE:  pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-recommendation.  Any objections shall be filed with the clerk of the court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:    June 25, 2008
             Syracuse, NY

David E. Peebles
U.S. Magistrate Judge